## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| COLBY D. PHILPOT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-24-702-SLP |
| | ) |
| GRINNELL MUTUAL REINSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

### O R D E R

Before the Court is Plaintiff's Amended Motion to Compel Discovery [Doc. No. 22]. Defendant has responded, [Doc. No. 28], and the time to file a reply has passed. For the reasons that follow the Motion is GRANTED in part and DENIED in part.

**I.   Background**

This action involves claims for breach of contract and breach of the duty of good faith and fair dealing associated with an automobile insurance policy Plaintiff had with Defendant. The subject policy provided underinsured motorist (UIM) coverage up to $100,000. On June 29, 2023, while the policy was in effect, Plaintiff was involved in an automobile accident with nonparty Rogelio Pena Salazar. Mr. Salazar was at fault, and his insurance carrier paid Plaintiff the $30,000 policy limit of liability coverage available under his policy. Plaintiff contends he had personal injuries from the accident that resulted in damages beyond those covered by Mr. Salazar's insurance, including a shoulder injury that required surgery.

Plaintiff hired an attorney who requested that Defendant pay the full $100,000 policy limit of UIM coverage. Defendant initially offered $10,000 to resolve the claim. During subsequent negotiations, Defendant relied on an opinion it obtained from an orthopedic surgeon named Michael Johnson. Dr. Johnson worked with a company called ReMed Casualty Consultants which Defendant hired to analyze Plaintiff's medical records. Dr. Johnson wrote a report where he opined that Plaintiff's shoulder conditions were chronic and degenerative rather than caused by the subject automobile accident.[1] After some additional discussion between Plaintiff's attorney and Defendant's adjuster, Defendant provided a final offer of $40,000.

Plaintiff filed suit in state court on June 21, 2024, and Defendant removed the action to this court on July 12, 2024. *See* [Doc. No. 1]. Plaintiff contends Defendant breached the terms of the insurance policy and acted in bad faith by refusing to pay the policy limit of UIM coverage. *See* [Doc. No. 1-1] at 4-5.

## II.  Governing Standard

Civil litigants "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . ." Fed. R. Civ. P. 26(b)(1). Relevance "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund,*

---

[1] Plaintiff has since deposed the doctor who performed his shoulder surgery, Dr. Mac E. Moore, who believes that Plaintiff's shoulder injury was caused by the subject accident and is not the result of degeneration. *See* Mot. [Doc. No. 22] at 9-13; *see also* Moore Depo. Tr. [Doc. No. 22-5].

*Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  The proportionality analysis considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Information "need not be admissible in evidence to be discoverable."  *Id*.

### III.  Discussion

The discovery requests at issue can be categorized as follows: (1) personnel files, performance evaluations, employee goals or incentives, and bonuses for the individuals involved in the handling of Plaintiff's claim; (2) certain resources available to Defendant's adjusters when handling UIM claims; (3) claim files for 316 claims where Defendant worked with ReMed from May 23, 2019 to May 23, 2024; (4) documents included on Defendant's privilege log that are withheld as "[c]onfidential and proprietary reserve information."  Mot. [Doc. No. 22] at 16-30.

Defendant wholly fails to address the fourth category of discovery requests and therefore appears to concede the referenced documents are discoverable.  *See* Resp. [Doc. No. 28] at 1-15.  In any event, Plaintiff states that none of the documents implicate attorney work product or attorney-client privilege, and it appears any issue with production of confidential or proprietary documents can be alleviated by production pursuant to the Protective Order. [Doc. No. 11].  Accordingly, Plaintiff's Motion is GRANTED as to the

specific documents listed at the conclusion of his Motion. [Doc. No. 22] at 30.[2] The Court proceeds to address the other categories, noting preliminarily that the parties devote most of their attention to the third category: claim files.

### A.     Personnel Files and Incentives

Plaintiff first seeks the personnel file of Defendant's primary adjuster who handled the claim, Paige Garcia, in addition to performance reviews, job evaluations, and bonuses for Ms. Garcia from 2019 to 2024. *Id*. at 16. Plaintiff seeks the same categories of documents over the same timeframe for four other employees: Janna Hintz, Leanna Lindenman, Jane Casten, and Jamie Fletschock.[3] *See id.* at 17. More broadly, Plaintiff seeks documents regarding bonus criteria or goals for Defendant's UIM adjusters from 2019-2024. *See id.*

Plaintiff contends personnel files and performance reviews are relevant to his bad faith claim because they would help explain how Defendant expected claims to be handled: i.e., what conduct Defendant encourages or discourages. *See* Mot. [Doc. No. 22] at 18-19. Plaintiff believes the bonus information he seeks is similarly relevant to show what kind of conduct Defendant rewards with respect to claim handling, and whether its adjusters are

---

[2] This aspect of the discovery dispute was unquestionably avoidable and should have been resolved via meet and confer. Both parties are admonished that discovery motions should be a last resort, filed only after a meaningful and thorough effort to resolve unnecessary disputes like this one, and the Court expects them to be significantly more cooperative and realistic about what documents are discoverable in the future.

[3] Plaintiff's Requests for Production originally included a longer list of employees, but Plaintiff withdrew his request for documents pertaining to those additional employees based on a representation by defense counsel that those individuals were not involved with Plaintiff's claim. *See* [Doc. No. 22-11] at 8-9.

incentivized to reduce the amounts paid on claims. *Id.* at 19. Plaintiff also asserts "[c]ourts have generally permitted discovery of relevant personnel files in insurance bad faith cases" and cites eight cases from various jurisdictions without any analysis as to how those cases are similar to this one. *Id.* at 19-20.

Although it generically asks the Court to deny Plaintiff's request for personnel files, Defendant concedes that Oklahoma federal courts "have consistently concluded that limited portions of personnel files of those particular individuals involved in handling the claim[]" may be relevant. Resp. [Doc. No. 28] at 6. Defendant asserts, however, that Plaintiff's requests "should be limited to the 'background, qualifications, and job performance' of the 'adjuster directly involved in the handling of Plaintiffs' claim.'" *See id.* at 6-7 (quoting *Fullbright v. State Farm Mut. Auto. Ins. Co.*, CIV-09-297-D, 2010 WL 300436, at *4 (W.D. Okla. Jan. 20, 2010)). Defendant further asserts the requests are overly broad because they seek documents for multiple years prior to Plaintiff's accident and claim, and that the potential relevance to Plaintiff's bad faith claim is speculative. *See id.* at 7-8. Plaintiff did not file a reply and thus has not addressed these arguments.

Accordingly, Defendant appears to concede documents pertaining to Ms. Garcia's background, qualifications, and job performance are discoverable. And Defendant makes no argument whatsoever regarding any of the other employees listed above and their involvement with Plaintiff's claim (or lack thereof). As such, Defendant concedes the same kinds of documents are discoverable as to Janna Hintz, Leanna Lindenman, Jane Casten, and Jamie Fletschock. On the other hand, Plaintiff makes no argument as to why documents up to four years prior to his accident are relevant, or why any additional

5

documents beyond those related to the pertinent individuals' background, qualifications, and job performance would be relevant.[4]

The same is true for documents regarding bonus criteria: Plaintiff's arguments for their relevance are generic, speculative, and untethered to any specific allegation in this case. *See* [Doc. No. 22] at 19-20. Plaintiff partially quotes *Fullbright*'s recognition in dicta that a Pennsylvania federal court found similar documents discoverable, but the *Fullbright* court ultimately held the "[p]laintiffs ha[d] not presented sufficient justification to support obtaining information . . . regarding merit pay or related salary information." *Fullbright*, 2010 WL 300436, at *3-4. The *Fullbright* court noted that the plaintiffs "speculate[d] that adjusters' salaries are affected by the number of claims reduced or denied; however, that speculation is not sufficient to justify disclosure of personal and sensitive information contained in personnel files." *Id*. at *4. For the same reasons, the Court finds Plaintiff has not shown that production of documents regarding bonus criteria or bonuses paid to the specific employees listed above is warranted in this case.

For the reasons set forth, Plaintiff's Motion is GRANTED in PART with respect to the first category of documents requested: Defendant is ordered to produce performance reviews or evaluations for Paige Garcia, Janna Hintz, Leanna Lindenman, Jane Casten, and Jamie Fletschock for 2023 and 2024 (i.e., the years Plaintiff's claim was pending). Defendant is further ordered to produce any records from these individuals' personnel files that reflect their "job qualifications, education, and training with regard to claims

---

[4] Again, it is abundantly clear from this discussion that the parties could have resolved this dispute without the need for Court intervention.

handling." *See Williams v. Allstate Fire & Cas. Ins. Co.*, No. CIV-13-828-D, 2015 WL 1602054, at *2 (W.D. Okla. Apr. 9, 2015) (quoted by Defendant in its Response). Plaintiff's Motion is DENIED as to its requests for documents regarding bonus criteria or bonuses paid to these individuals, documents prior to the years of Plaintiff's claim, and to the extent Plaintiff seeks additional personnel records beyond those referenced above.

      **B.**    **Defendant's UIM Claim Resources**

Plaintiff seeks two particular resources utilized by Defendant's adjusters for training or consultation on UIM claims: (1) a "Claims Tool Kit," which is an "online subscription service" Defendant described in an interrogatory response as a resource for its adjusters; and (2) Defendant's "Health Metrics" system or database. Mot. [Doc. No. 22] at 20-21. As with the category above, Plaintiff generically states training documents are relevant but makes no effort to explain how the requested documents are relevant in this case. *See id.* Plaintiff fails to explain what the "Health Metrics" system is, let alone why it is sought, and the Court declines to search the record and make that argument for him.

Defendant states that the "Claims Tool Kit" is an online service operated by a non-party over which Defendant has no control, and it contains a warning that Defendant is prohibited from disclosing the information under its licensing agreement without the permission of the non-party. [Doc. No. 28] at 8. Absent any reply or other argument on this topic, Plaintiff has in no way met his burden to show the Claims Tool Kit is within Defendant's control. *See Choctaw Town Square, LLC v. Kokh Licensee, LLC*, No. CIV-13-1246-F, 2015 WL 11661752, at *2 (W.D. Okla. Mar. 27, 2015) ("The Tenth Circuit has not defined 'control' for purposes of the production of documents but has stated that the

party seeking production of the documents bears the burden of proving that the opposing party has control." (citing *Norman v. Young*, 422 F.2d 470, 472-473 (10th Cir. 1970)); *see also Barron v. Nat'l Health Ins. Co.*, No. CIV-19-591-SLP, 2020 WL 9600579, at *1-2 (W.D. Okla. May 14, 2020) (denying a motion to compel because "Plaintiff has not met her burden regarding whether the requested information and documents are within Defendant's possession, custody, or control."). Accordingly, Plaintiff's Motion is DENIED as to this category of discovery requests.

    **C.**    **Claim Files**

Plaintiff seeks production of 316 claim files from May 23, 2019 to May 23, 2024 that correspond to reports produced by RedMed in response to a subpoena. [Doc. No. 22] at 22. Fifty-nine of those reports were authored by Dr. Johnson, and the other 257 were written for ReMed by other doctors. *Id.* Plaintiff also seeks to compel a response to an interrogatory with fourteen sub-parts regarding these claims.[5] *Id.*

Plaintiff maintains that ReMed "boosts (sic) that it can find evidence to defeat causation and payment of bodily injury claims." [Doc. No. 22] at 24. Plaintiff contends that Defendant utilizes ReMed's reports to intentionally underpay claims, and that it did so with respect to Plaintiff's claim. *Id.* at 24. Plaintiff references nine reports from Dr. Johnson involving motor vehicle accidents where Dr. Johnson opined that a shoulder injury

---

[5] Plaintiff's Interrogatory No. 17 seeks written answers regarding fourteen sub-categories for all 316 claim files, for what appears to be a total of 4,424 discrete answers. *See id.* This request is unduly burdensome and disproportionate to the needs of this case. Moreover, it appears from Plaintiff's request that the information sought would be based on the contents of the claim files themselves. *See id.*

8

was unrelated to the accident. *Id.* at 25. Plaintiff contends the claim files he seeks will show Defendant's conduct was part of a pattern and practice to utilize biased medical opinions. *Id.* at 25-26. Plaintiff further contends the claim files will demonstrate the amount of money Defendant has saved on such claims. *See id.* As such, Plaintiff contends the claim files he seeks are relevant to his bad faith claim and his request for punitive damages. *Id.* at 25-29.[6]

Defendant objects to these requests as irrelevant, overly broad, unduly burdensome, and disproportional to the needs of the case, though its argument primarily relates to undue burden and lack of proportionality. *See* Resp. [Doc. No. 28] at 9-14. Defendant states that its counsel would have to review all the claim files for privileged communications, attorney work product, communications with experts, private and sensitive medical information of claimants, and information from claims involving minors. *Id.* at 10-11. Counsel states, subject to Federal Rule of Civil Procedure 11, that review of all claim files to redact this information would likely take over 1,000 hours of attorney and paralegal time and at least three months to complete. *Id.* at 11. Counsel asserts some of the claim files involve claims in jurisdictions other than Oklahoma, but claim decisions are "highly dependent" on the law of a particular jurisdiction. *See id.* at 12-13. Plaintiff did not file a reply, and he does not otherwise address Defendant's argument regarding proportionality.

---

[6] Plaintiff's Complaint includes several factual allegations regarding Defendant's consultation with non-treating physicians as relevant to his bad faith claim. *See* [Doc. No. 1-2] at 6-7.

Overall, the parties' arguments pass right by one another. Plaintiff thoroughly explains why he believes the claim files are relevant but fails to address proportionality, and Defendant vice versa.[7] Under these circumstances, the Court initially agrees with Plaintiff that the claim files involving ReMed appear facially relevant to his bad faith claim and the allegations in this case. *See Mercado v. Arrow Truck Sales, Inc.*, No. 23-2052-HLT-ADM, 2024 WL 1557539, at *3 (D. Kan. Apr. 10, 2024) ("The party seeking discovery bears the initial burden to establish its relevance."). Nevertheless, the Court agrees with Defendant that the request, as written, is not proportional to the needs of the case, considering "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Plaintiff has not shown the full scope of 316 claim files sought are important to resolving the issues in this case. Plaintiff's request is not limited to UIM claim files, or claims in Oklahoma, yet the documents are sought in relation to a bad faith UIM claim premised solely on Oklahoma substantive law. Moreover, the parties agree the claim decision in this action was based in whole or in part on ReMed's conclusion that Plaintiff's shoulder injury was chronic or degenerative rather than due to the accident, but the request is not limited to any particular type of injury or opinion by ReMed, even though Plaintiff identifies nine similar reports in his Motion. *See* [Doc. No. 22] at 25. Finally, Plaintiff

---

[7] Although not expressly connected, part of Defendant's argument may relate to relevance. *See* [Doc. No. 28] at 9, 12-13. But Defendant focuses on proportionality and burden, and the arguments regarding the subject matter of this case also go to "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1).

10

does not dispute that review of the documents as requested would take over 1,000 hours of attorney or paralegal time or at least three months to complete.

Accordingly, balancing the relevance of at least some documents sought against the proportionality concerns discussed herein, the Court finds Plaintiff's request for production of claim files involving ReMed should be granted but limited to UIM claims in Oklahoma involving shoulder surgeries. Defendant may produce those documents subject to the Protective Order [Doc. No. 11] and may redact or withhold any privileged information contained therein as it would any other document production. *See* Fed. R. Civ. P. 26(b)(5)(A). Plaintiff's Motion is denied as to Interrogatory No. 19. *See* n. 5, supra.

### IV. Conclusion

IT IS THEREFORE ORDERED that Plaintiff's Amended Motion to Compel Discovery [Doc. No. 22] is GRANTED IN PART and DENIED IN PART as set forth above.

IT IS SO ORDERED this 23rd day of April, 2025.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE